IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANIEL LAWRENCE SMITH, | No. CIV S-07-0837-WBS-CMK-P |
| Plaintiff, | |
| vs. | FINDINGS AND RECOMMENDATIONS |
| HERNANDEZ, et al., | |
| Defendants. | |
| _____/ | |

Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is defendants' motion to dismiss the first amended complaint (Doc. 30). Defendants have also filed requests for judicial notice (Docs. 32 and 35).

**I. BACKGROUND**

Pursuant to the court's May 5, 2008, order, this action proceeds against defendants Figeroe and Gordon only on plaintiff's First Amendment claim based on denial of access to the courts. Both defendants have appeared by way of their motion to dismiss.

/ / /

/ / /

1

Plaintiff claims that, in January 2006, correctional officer Figeroe packed all of his legal documents and personal property into a large box to be transferred with plaintiff to another prison. He states that correctional officers Figeroe and Gordon "took full control and possession of all plaintiff's legal materials. . . ." According to plaintiff, when he arrived at the new prison, his property box was missing. Plaintiff claims that, without his legal documents, he is unable to meet court filing deadlines in a number of pending cases. He states that he cannot "file all appeal document(s) relevant to challenging the unjust conviction and unfair sentence in my criminal case on time." The court notes that, other than the current action, plaintiff states that he does not have any other lawsuits pending.

## II.  STANDARDS FOR MOTION TO DISMISS

In considering a motion to dismiss, the court must accept all allegations of material fact in the complaint as true. See Erickson v. Pardus, 127 S.Ct. 2197 (2007). The court must also construe the alleged facts in the light most favorable to the plaintiff. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam). All ambiguities or doubts must also be resolved in the plaintiff's favor. See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969). Pro se pleadings are held to a less stringent standard than those drafted by lawyers. See Haines v. Kerner, 404 U.S. 519, 520 (1972).

In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 127 S.Ct.1955, 1964-65 (2007). Allegations of specific facts are not necessary so long as the statement of facts gives the defendant fair notice of what the claim is and the grounds upon which it rests. See Erickson, 127 S.Ct. at 2197.

/ / /

1       To determine whether a complaint states a claim upon which relief can be granted, the court generally may not consider materials outside the complaint and pleadings. See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998); Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994). The court may, however, consider: (1) documents whose contents are alleged in or attached to the complaint and whose authenticity no party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question, and upon which the complaint necessarily relies, but which are not attached to the complaint, see Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994), except prison regulations, see Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996).

      Under these standards, a statute of limitations defense may be raised in a motion to dismiss. Finally, leave to amend must be granted ". . . [u]nless it is absolutely clear that no amendment can cure the defects." Lucas v. Dep't of Corrections, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

### III. DISCUSSION

      Defendants Figeroe and Gordon argue that plaintiff cannot state a First Amendment claim based on denial of access to the courts because he cannot show an actual injury. They also argue that they are entitled to qualified immunity.

    A. **Failure to State a Claim**

      Prisoners have a constitutional right of access to the courts. See Lewis v. Casey, 518 U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977); Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995) (discussing the right in the context of prison grievance procedures). This right requires prison officials to "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds, 430 U.S. at 828. The right, however, only requires that

1  prisoners have the capability of bringing challenges to sentences or conditions of confinement.
2  See Lewis, 518 U.S. at 356-57.  Moreover, the right is limited to non-frivolous criminal appeals,
3  habeas corpus actions, and § 1983 suits.  See id. at 353 n.3 & 354-55.  Therefore, the right of
4  access to the courts is only a right to present these kinds of claims to the court, and not a right to
5  discover claims or to litigate them effectively once filed.  See id. at 354-55.

As a jurisdictional requirement flowing from the standing doctrine, the prisoner must allege an actual injury.  See id. at 349.  "Actual injury" is prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a non-frivolous claim.  See id.; see also Phillips v. Hust, 477 F.3d 1070, 1075 (9th Cir. 2007).  Delays in providing legal materials or assistance which result in prejudice are "not of constitutional significance" if the delay is reasonably related to legitimate penological purposes.  Lewis, 518 U.S. at 362.

Defendants contend:

> In the operative first amended complaint, Plaintiff does not cite any specific case name or case number to notify the Court or Defendants what particular claim or action Plaintiff alleges was compromised by Defendants Figueroa or Gordon's conduct.  Plaintiff, however, states that Defendants' conduct interfered with his ability to challenge the "unjust conviction and unfair sentence in my criminal case on time." (Doc. 15 at 2:8-9).  The Magistrate construed the first amended complaint to allege that Defendants Figueroa and Gordon "thwarted [Plaintiff] from pursuing habeas corpus relief with respect to his conviction." (Doc. 16 at 3:11-13).
> In order to understand the nature of Plaintiff's underlying claim and its substantive and procedural details for the purposes of this Motion to Dismiss, a review of the court's PACER listings for Plaintiff was conducted.  The analysis revealed that Plaintiff had initiated an action for habeas corpus relief in May 2005, in the Central District Court.  Defendants request this Court take judicial notice of Plaintiff's habeas corpus action, *Smith v. D.L. Runnels*, USDC-CD, Case No. 2:05-cv-03793-VAP-SS.  A review of the procedural history of *Smith v. Runnels* confirms that Plaintiff filed his Petition for Writ of Habeas Corpus (Habeas Doc. 1) on May 23, 2005 – which was eight months before Plaintiff's legal property was lost during the transfer in January 2006.  A copy of the PACER docket printout from *Smith v. D.L. Runnels* is attached as Exhibit A to Defendants' Request for Judicial Notice.  (footnotes omitted).

| | |
|---|---|
| 1 | \* \* \* |
| 2 3 | . . . An analysis of the procedural history of *Smith v. Runnels* evidences that on January 30, 2008, the District Court issued an Order denying Plaintiff's Certificate of Appealability. (Habeas Doc. 43). |

4   In his opposition to defendants' motion, plaintiff does not dispute the facts outlined by
5   defendants, but argues that he ". . . was denied access to the court due to the defendant loss of his
6   property, not only frustrated his attempts to press his claim in the court, but actual denied
7   plaintiff access to amend that claim with new evidence." According to plaintiff, his lost legal
8   materials contained "Newly Discovered evidence, exculpatory witnesses declarations that
9   exonerate plaintiff of the current crime." Plaintiff states that he had only obtained this new
10  evidence "shortly before January 31, 2006," after filing his habeas corpus case. As to denial of
11  the COA, plaintiff argues that the district court did so without the benefit of his new evidence.

12           Turning first to defendants' requests for judicial notice, defendants ask the court
13  to judicially notice court records. The court again observes that plaintiff does not dispute the
14  facts concerning plaintiff's other legal actions as outlined by defendants. In any event, the
15  requests for judicial notice should be granted. The court may take judicial notice pursuant to
16  Federal Rule of Evidence 201 of matters of public record. See U.S. v. 14.02 Acres of Land, 530
17  F.3d 883, 894 (9th Cir. 2008). Thus, this court may take judicial notice of state court records, see
18  Kasey v. Molybdenum Corp. of America, 336 F.2d 560, 563 (9th Cir. 1964), as well as its own
19  records, see Chandler v. U.S., 378 F.2d 906, 909 (9th Cir. 1967).

20           Turning now to defendants' motion to dismiss, it is clear that the loss of his legal
21  property did not prevent plaintiff from initially filing his habeas corpus action because it was
22  filed before his property was lost. The issue is whether the loss of his property sometime in
23  January 2006 prejudiced plaintiff's ability to present a claim within the pending habeas action
24  based on the new evidence which was among the lost property. Plaintiff states that, but for
25  defendants' conduct which resulted in the loss of his legal property, he would have been able to
26  amend his habeas petition based on the new evidence. Defendants argue in their reply brief that

the mere existence of newly discovered evidence is not enough to justify habeas corpus relief because plaintiff would still have had to show that the new evidence casts doubt on the reliability of the criminal proceedings.  This argument, however, misses the point of plaintiff's current civil rights claim that, due to defendants' conduct, he was unable to make this showing in his habeas proceeding.  Moreover, prejudice in the context of the actual injury requirement does not mean that plaintiff was prevented from pursuing a winning claim.  Rather, it requires that plaintiff show only that he was prevented from pursuing a non-frivolous claim.

Defendants do, however, raise the persuasive argument that plaintiff has not demonstrated that the new evidence would have given rise to a non-frivolous claim because he has failed to describe the contents of the new evidence or explain why it was not available earlier through due diligence.  The court also notes that plaintiff has not explained why the new evidence could not have been re-created despite the loss of his property.  Because plaintiff has failed to show that the new evidence would have given rise to a non-frivolous claim, the court agrees with defendants that plaintiff's first amended complaint does not adequately allege the actual injury requirement.  However, the court does not agree with defendants that this defect is fatal as a matter of law.  To the contrary, it is possible that plaintiff could cure the defect through further amendment of the complaint.

### B. **Qualified Immunity**

Defendants also argue that, even if plaintiff has stated a First Amendment claim, they are entitled to qualified immunity.  Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known."  Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  In general, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341 (1986).  In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional

right. See Saucier v. Katz, 533 U.S. 194, 201 (2001). If, and only if, a violation can be made out, the next step is to ask whether the right was clearly established. See id. This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition . . . ." Id. "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 202 (citation omitted). Thus, the final step in the analysis is to determine whether a reasonable officer in similar circumstances would have thought his conduct violated the alleged right. See id. at 205.

When identifying the right allegedly violated, the court must define the right more narrowly than the constitutional provision guaranteeing the right, but more broadly than the factual circumstances surrounding the alleged violation. See Kelly v. Borg, 60 F.3d 664, 667 (9th Cir. 1995). For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand [that] what [the official] is doing violates the right." See Anderson v. Creighton, 483 U.S. 635, 640 (1987). Ordinarily, once the court concludes that a right was clearly established, an officer is not entitled to qualified immunity because a reasonably competent public official is charged with knowing the law governing his conduct. See Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982). However, even if the plaintiff has alleged a violation of a clearly established right, the government official is entitled to qualified immunity if he could have ". . . reasonably but mistakenly believed that his . . . conduct did not violate the right." Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001); see also Saucier, 533 U.S. at 205.

The first two steps in the qualified immunity analysis involve purely legal questions. See Trevino v. Gates, 99 F.3d 911, 917 (9th Cir. 1996). The third inquiry involves a legal determination based on a prior factual finding as to the government official's conduct. See Neely v. Feinstein, 50 F.3d 1502, 1509 (9th Cir. 1995). In resolving these issues, the court must

view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff. Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

Defendants argue:

> . . .[T]he relevant inquiry in this case is whether Defendants Figueroa and Gordon could have reasonably believed that their alleged negligent loss of Plaintiff's box of property was unlawful. The court is to look at the situation as reasonable officials in Defendants Figueroa and Gordon's position could have perceived it. Saucier, 533 U.S. at 205. Here, reasonable officials faced with the same knowledge and circumstances as Defendants Figueroa and Gordon could have reasonably believed that accidental misplacement or loss of an inmate's box of personal or legal property during a prison transfer – while to be discouraged–did not constitute an unlawful act that would give rise to a Constitutional violation. For these reasons, Defendants Figueroa and Gordon are entitled to qualified immunity.

The court finds defendants' argument persuasive. Giving plaintiff the benefit of the doubt by assuming that the facts alleged in his complaint establish violation of a clearly established constitutional right, the court finds that defendants could have ". . . reasonably but mistakenly believed that [their] . . . conduct did not violate the right." Jackson, 268 F.3d at 651; see also Saucier, 533 U.S. at 205. Specifically, plaintiff does not allege any malice on the part of defendants with respect to the loss of his property. Rather, he claims that they were, at worst, grossly negligent. In essence, it was an accident, not intentional conduct, which resulted in the loss of plaintiff's property and no reasonable officer could believe that such an accident would violate a constitutional right.

### IV.  CONCLUSION

Because the court has assumed that plaintiff states a cognizable First Amendment claim and concludes that defendants are entitled to qualified immunity, it is not necessary to decide whether plaintiff is entitled to leave to amend.

/ / /

/ / /

Based on the foregoing, the undersigned recommends that:

1. Defendants' requests for judicial notice (Docs. 32 and 35) be granted;

2. Defendants' motion to dismiss (Doc. 30) be granted on the basis of qualified immunity;

3. This action be dismissed with prejudice; and

4. The Clerk of the Court be directed to enter judgment and close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 20 days after being served with these findings and recommendations, any party may file written objections with the court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).


DATED: September 12, 2008

                                             /s/ Craig M. Kellison
                                             **CRAIG M. KELLISON**
                                             UNITED STATES MAGISTRATE JUDGE