**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

DANIEL LAWRENCE SMITH,

Plaintiff,

vs.

FIGEROE, et al.,

Defendants.

_______________________________/

No. CIV S-07-0837-WBS-CMK-P

FINDINGS AND RECOMMENDATIONS

Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is defendants' unopposed motion for summary judgment (Doc. 56).

## I. BACKGROUND

### A. Plaintiff's Allegations

This action proceeds on the amended complaint filed on November 10, 2008. Plaintiff claims that, in January 2006, correctional officer Figeroe packed all of his legal documents and personal property into a large box to be transferred with plaintiff to another prison. He states that correctional officers Figeroe and Gordon "took full control and possession

of all plaintiff's legal materials. . . ." According to plaintiff, when he arrived at the new prison, his property box was missing. Plaintiff claims that, without his legal documents, he is unable to meet court filing deadlines in a number of pending cases. He states that he cannot "file all appeal document(s) relevant to challenging the unjust conviction and unfair sentence in my criminal case on time."

Plaintiff also alleges that defendants were aware of "exonerating evidence" contained in the lost box of legal materials and, therefore, acted with malice and the intent of denying plaintiff access to the courts. As to the "exonerating evidence," plaintiff states this consisted of a declaration from an individual known as "Keybo" which was obtained on plaintiff's behalf by a family member. According to plaintiff, "Keybo" stated that he was a witness to the incident giving rise to plaintiff's conviction and that he was prepared to declare that plaintiff was not the perpetrator. Plaintiff states that, as a result of the loss of the declaration from "Keybo," he was prevented from submitting an amended habeas petition in the state court and thereby pursuing a non-frivolous claim of actual innocence. Plaintiff further claims that "[d]ue to the fact that Keybo is in transit, plaintiff have been informed by his family member that they are unable to locate Keybo a second time."

On January 15, 2009, the court determined that the amended complaint stated a cognizable claim for relief and directed defendants to respond.

**B. <u>Defendants' Evidence</u>**

Defendants submit evidence establishing the following undisputed facts:

1. Plaintiff was transferred from High Desert State Prison to Pleasant Valley State Prison on February 1, 2006;

2. On January 31, 2006, plaintiff brought his legal materials to Building 2 at High Desert State Prison where he observed defendant Figeroe and another unknown correction officer place his materials into a box, then label and seal the box;

3. Plaintiff then observed defendant Figeroe place the box on a cart with those of other inmates being transferred that day;

4. Plaintiff then observed defendant Gordon wheel the cart out of Building 2;

5. Plaintiff was taken to the Receiving and Release area on February 1, 2006, to board a bus for transport;

6. At that time, plaintiff asked an officer to confirm that his box was ready for transport and the officer confirmed that it was;

7. When plaintiff arrived at Pleasant Valley State Prison he was informed by the transport officer that his box was not on the bus;

8. Other correctional officers had access to and responsibility for transport of plaintiff's box of materials after defendants Figeroe and Gordon released control of the boxes being transported that day; and

9. Plaintiff admitted at his deposition that defendants did not act maliciously and had no known reason to want to harm him.

Defendant Figeroe submitted a declaration in support of the motion in which he states that he has no specific recollection of Smith or his property and had no contact with the box of materials in question other than to place the box on the cart for transport. Defendant Gordon submitted a substantially similar declaration.

Regarding the "Keybo" declaration, defendants state that the following facts are undisputed:

1. The declaration consisted of a statement from "Keybo" that he had been present and witnessed the robbery;

2. "Keybo" was prepared to testify that, while plaintiff hit the robbery victim, another individual took the money from the victim;

3. Plaintiff had a conversation with "Keybo" on the day of plaintiff's criminal trial in which "Keybo" related this information to plaintiff; and

4. Sometime in February or March 2008, plaintiff obtained "Keybo's" declaration.

/ / /

/ / /

/ / /

/ / /

/ / /

## II. STANDARD FOR SUMMARY JUDGMENT

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.
>
> Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party

must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

/ / /

/ / /


## III. DISCUSSION

In their motion for summary judgment, defendants argue: (1) plaintiff cannot demonstrate an actual injury sufficient to prevail on his First Amendment claim of access to the courts; and (2) defendants are entitled to qualified immunity.

### A. Actual Injury

Prisoners have a First Amendment right of access to the courts. See Lewis v. Casey, 518 U.S. 343, 346 (1996); Bounds v. Smith, 430 U.S. 817, 821 (1977); Bradley v. Hall, 64 F.3d 1276, 1279 (9th Cir. 1995) (discussing the right in the context of prison grievance procedures). This right includes petitioning the government through the prison grievance process. See id. Prison officials are required to "assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." Bounds, 430 U.S. at 828. The right of access to the courts, however, only requires that prisoners have the capability of bringing challenges to sentences or conditions of confinement. See Lewis, 518 U.S. at 356-57. Moreover, the right is limited to non-frivolous criminal appeals, habeas corpus actions, and § 1983 suits. See id. at 353 n.3 & 354-55. Therefore, the right of access to the courts is only a right to present these kinds of claims to the court, and not a right to discover claims or to litigate them effectively once filed. See id. at 354-55.

As a jurisdictional requirement flowing from the standing doctrine, the prisoner must establish an actual injury. See id. at 349. "Actual injury" is prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a non-frivolous claim. See id.; see also Phillips v. Hust, 477 F.3d 1070, 1075 (9th Cir. 2007). Delays in providing legal materials or assistance which result in prejudice are "not of constitutional significance" if the delay is reasonably related to legitimate penological purposes. Lewis, 518 U.S. at 362.

/ / /

Defendants argue that plaintiff cannot show an actual injury. As defendants state, the essence of plaintiff's First Amendment claim is that, had defendants not intentionally lost or destroyed his legal materials – including the "Keybo" declaration – he would have been able to use the "Keybo" declaration as new evidence of his actual innocense to support an amended petition. According to plaintiff, because he was not able to submit such new evidence, he was unable to amend his habeas petition. Defendants assert that, even assuming the "Keybo" declaration went to plaintiff's actual innocence, it could not have served as "new evidence" to support an amended habeas petition. Citing Townsend v. Sain, 372 U.S. 293, 317 (1963), defendants correctly note that "new evidence" is "limited to what which 'could not reasonably have been presented at trial.'" See also In re Hardy, 41 Cal.4th 977, 1016 (2007); People v. Shipman, 62 Cal.2d 226 (1965); Cal. Penal Code § 1473.6(b). Here, the undisputed evidence establishes that plaintiff knew about the contents of the "Keybo" declaration at the time of trial. Thus, it could not have been considered "new evidence." The court agrees with defendants that, because plaintiff was not deprived of any arguable basis to seek amendment of his habeas petition, he did not suffer any actual injury with respect to his access to the courts. See Phillips v. Hust, 477 F.3d 1070 (9th Cir. 2007).

**B. Qualified Immunity**

Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). In general, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 475 U.S. 335, 341 (1986). In ruling upon the issue of qualified immunity, the initial inquiry is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show the defendant's conduct violated a constitutional right. See Saucier v. Katz, 533 U.S. 194, 201 (2001). If, and only if, a violation can be made out, the next step is to ask whether the right was clearly established. See id. This inquiry "must be undertaken

in light of the specific context of the case, not as a broad general proposition . . . ." Id.  "[T]he right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense:  The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Id. at 202 (citation omitted).  Thus, the final step in the analysis is to determine whether a reasonable officer in similar circumstances would have thought his conduct violated the alleged right. See id. at 205.

When identifying the right allegedly violated, the court must define the right more narrowly than the constitutional provision guaranteeing the right, but more broadly than the factual circumstances surrounding the alleged violation.  See Kelly v. Borg, 60 F.3d 664, 667 (9th Cir. 1995).  For a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand [that] what [the official] is doing violates the right."  See Anderson v. Creighton, 483 U.S. 635, 640 (1987).  Ordinarily, once the court concludes that a right was clearly established, an officer is not entitled to qualified immunity because a reasonably competent public official is charged with knowing the law governing his conduct.  See Harlow v. Fitzgerald, 457 U.S. 800, 818-19 (1982).  However, even if the plaintiff has alleged a violation of a clearly established right, the government official is entitled to qualified immunity if he could have ". . . reasonably but mistakenly believed that his . . . conduct did not violate the right."  Jackson v. City of Bremerton, 268 F.3d 646, 651 (9th Cir. 2001); see also Saucier, 533 U.S. at 205.

The first two steps in the qualified immunity analysis involve purely legal questions.  See Trevino v. Gates, 99 F.3d 911, 917 (9th Cir. 1996).  The third inquiry involves a legal determination based on a prior factual finding as to the government official's conduct.  See Neely v. Feinstein, 50 F.3d 1502, 1509 (9th Cir. 1995).  In resolving these issues, the court must view the evidence in the light most favorable to plaintiff and resolve all material factual disputes in favor of plaintiff.  Martinez v. Stanford, 323 F.3d 1178, 1184 (9th Cir. 2003).

As discussed above, the undisputed facts establish that plaintiff cannot show an actual injury. Therefore, there was no First Amendment violation. Further, the evidence shows that plaintiff cannot establish that defendants were responsible for the loss and/or destruction of his legal materials. As defendants note, other correctional officers had responsibility for and custody over plaintiff's materials after defendants. Plaintiff has not presented any evidence showing that defendants' conduct resulted in the loss and/or destruction of his property.

## IV. CONCLUSION

Based on the foregoing, the undersigned recommends that defendants' unopposed motion for summary judgment (Doc. 56) be granted and that all other pending motions be denied as moot.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 29,2010

**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE